**ORIGINAL**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,        )
                                 )
                 Plaintiff,      )
                                 )
        vs.                      )   CRIMINAL NO. 02-0864 WJ
                                 )
JAVIER ROGEDO-CISNEROS,          )
                                 )
                 Defendant.      )
_____)

02 DEC 17 PM 1:07

## MEMORANDUM AND ORDER

On September 13, 2002, following a trial by jury, defendant Javier Rogedo-Cisneros ("Rogedo") was found guilty of two counts of bringing in illegal aliens and aiding and abetting, in violation of 8 U.S.C. § 1324(a)(2)(B)(ii) and two counts of transporting illegal aliens and aiding and abetting, in violation of 8 U.S.C. § 1324(a)(1)(A)(ii) and (B)(i). Rogedo was found not guilty of the charge of conspiracy to bring in and transport illegal aliens and aiding and abetting, in violation of 8 U.S.C. § 1324(a)(1)(A)(v)(l) and 18 U.S.C. § 2. Two co-defendants, Rodrigo Velasquez-Torres ("Velasquez") and Jose Luis LeonGutierrez ("Leon") were found not guilty on all charges. Currently before the court is the motion by Rogedo seeking acquittal or new trial. For the reasons stated herein, the motion is denied.

**Facts**

The evidence produced during the trial established that, during March of 2002, United States Border Patrol Agents discovered indications of a vehicle traveling cross country, and later found an abandoned van with Arizona temporary license plates. With the airborne assistance, the agents were



able to locate a large group of illegal aliens who had fled the van on foot. Two persons from this group testified at trial: Aurelio Ramirez-Alonzo ("Ramirez") and Estela Nunez-Jaracuaro ("Nunez").

Ramirez testified that he is a citizen of Mexico who entered illegally into the United States on March 12, 2002. Before leaving his home town, Zaniora, Michoacan, Mexico, for the United States-Mexico border, Ramirez had arranged with a woman to be smuggled to San Francisco, California for $800.00. Ramirez testified that he and others who had made similar arrangements were bused to San Luis, Mexico where they met Leon, Rogedo, and Velasquez. The three defendants had used two vans in order to smuggle Ramirez and the other aliens into the United States. According to Ramirez, Velasquez drove the vehicle which contained the aliens from Mexico into the United States. Ramirez testified that the three defendants took turns driving the van. They traveled by night and rested during the day. The three defendants did not ask him for money. They told the aliens not to say anything about the smugglers if they were arrested. The day before they were arrested, two of the defendants, Leon and Rogedo, separated from the group at about 4:00 a.m. for the purpose of acquiring another two vans that were going to be used to transport the aliens to various destinations in the United States. Ramirez was shown a photo array in which he positively identified the three defendants as the ones who served as guides or alien smugglers for the group of aliens.

Ramirez was cross-examined about inconsistencies between his trial testimony and prior statements he had made. For example, why had he not told authorities about American currency he had hidden in his shoe? And why had he not revealed to authorities a prior conviction he had received in the United States?

2

Case 2:02-cr-00864-WJ Document 63 Filed 12/17/02 Page 3 of 7

Ramirez's testimony was complicated by the difficulty he had in answering simple questions, and the court considered, but ultimately decided against, striking his testimony. In addition, Ramirez's testimony was also complicated by difficulties in the translation process. Ultimately, the court instructed the jury that it could consider the witness's apparent evasiveness in assessing his credibility.

Nunez is also a citizen of Mexico. She entered illegally into the United States from Mexico on March 12, 2002. She had arranged, on March 10, 2002, with an unknown woman to be smuggled into the United States. For $800.00 she was going to be smuggled to San Francisco, California. She and other smuggled aliens were transported to the San Luis, Mexico area in a van driven by Rogedo. In San Luis, Nunez met with defendants Velasquez and Leon. Nunez and a number of other aliens rode in one van driven by defendant Rogedo into the United States, while another van containing Velasquez, Leon, and the remaining aliens rode in another van. The three defendants told the group of aliens that if they were arrested, they were not to identify the smugglers. None of the defendants asked her for money. Prior to their arrest, Rogedo separated at about 4:00 a.m. from his co-defendants and the rest of the aliens in order to obtain two more vans. The vans were to be used to transport the aliens to various destinations in the United States.

The group rested during the day and traveled by night. If the path was level, they would ride in the van; however, if the path was rough, they would walk behind the van. Nunez was shown a photo array and positively identified the three defendants as the ones who smuggled the group into the United States.

Nunez referred to Rogedo as the "coyote," the smuggler, and to the other two defendants as "guides." She also stated that Rogedo drove her in a van from her home up to the border. She stated

that at the border, the group separated into two vans; Nunez was in a van that Rogedo drove, and the guides traveled in the other van. After the van driven by the guides broke down, the group traveled in the van driven by Rogedo.

Nunez was questioned at length about inconsistencies in her trial testimony with prior statements that she had made, including the fact that she had not disclosed her having attempted to enter the United States illegally approximately two months before the incident in question.

## 2. Conclusions of Law

In the present motion, Rogedo contends that there is insufficient evidence to support the charges on which he was convicted. The essence of his argument is that, since his co-defendants were acquitted, he must be also.

In reviewing a conviction for a motion for judgment of acquittal based on insufficiency of the evidence, the issue is whether, viewing all the evidence, direct and circumstantial, in the light most favorable to the government, along with all reasonable inferences from the evidence, the court is convinced that a reasonable finder of fact could have found the defendant guilty beyond a reasonable doubt. *United States v. Chavez-Palacios*, 30 F.3d 1290, 1293-94 (10th Cir. 1994). A conviction will be reversed for insufficiency of evidence only if no rational finder of fact could have found the essential elements of the crime. *United States v. Snrina*, 80 F.3d 1450, 1459 (10th Cir. 1996); *United States v. Hanzlicek*, 187 F.3d 1228, 1239 (10th Cir. 1999).

Further, a court may grant a new trial "if required in the interest of justice." Fed.R.Crim.P. 33. This power is invoked only in "exceptional cases," where the evidence "preponderates heavily against the verdict." *United States v. Evans*, 42 F.3d 586, 593 (10h Cir. 1994). Such motions are not

4

regarded with favor and are granted only with great caution, being addressed to the sound discretion of the trial court. *United States v. Page*, 828 F.2d 1476, 1478 (10th Cir.), *cert. denied*, 484 U.S. 989 (1987).

8 U.S.C. § 1324(a)(2)(B)(ii) provides criminal penalties for any person who knowingly, "or in reckless disregard of the fact that an alien has not received prior authorization to come to, enter or reside in the United States, brings to .... the United States in any manner whatsoever, such alien ... for the purposes of commercial advantage or personal financial gain." 8 U.S.C. § 1324(a)(2)(B)(ii). In addition, 8 U.S.C. § 1324(a)(1)(A)(ii), provides that anyone who "knowing[ly] or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, transports, or moves or attempts to transport or move such alien within the United States by means of transportation or otherwise, in furtherance of such violation of the law" has committed a crime.

Rogedo's motion will be denied. Both material witnesses testified that Rogedo led the group of illegal aliens, and at times drove them across the United States-Mexico border, that the group traveled under the cover of night, and that the defendants had warned the group not to identify them as the smugglers if arrested. A reasonable juror could conclude that Rogedo knew of their illegal status.

Rogedo helped to transport the aliens once they were inside the United States. That Rogedo transported the aliens "in furtherance of" the illegal presence of aliens in the United States is supported by: 1) the aliens having paid large amounts of money to be taken into the United States and transported to San Francisco, California; 2) Rogedo having brought the aliens into the United States at a place other than a designated port of entry and telling them that if they were caught they

5

were not to disclose the transporters' names; and 3) the aliens having been treated as "human cargo" in that they had never met the transporters until the day they crossed into the United States and in that their movements were directed by the defendants. *See United States v. Baraias-Chavez*, 134 F.3d 1444, 1447 (10th Cir. 1998). This evidence supported the alien importation and transportation charges as well as the aiding and abetting charges.

Contrary to Rogedo's assertion, the jury did not find Rogedo guilty while acquitting his co-defendants based on the same evidence. Ramirez testified that he and Nunez took a commercial bus from Michoacan, Mexico, to the United States-Mexico border. He also testified that all three defendants took turns driving the vehicles they used to cross into and continue through the United States. On the other hand, material witness Nunez unequivocally testified that Rogedo was the "coyote," while the other co-defendants were mere "guides." Although subjected to some cross-examination about her statements, Nunez's testimony presented few credibility problems. She stated that Rogedo drove the vehicle she took up to the border area and always drove while they were in the United States. It is clear that the jury believed Nunez's version of events, in which Rogedo acted as the leader of the group and as the driver of the smuggling vehicles. Given the evidence, the jury could reasonably convict Rogedo while acquitting his co-defendants.

Rogedo stresses alleged inconsistencies in the testimonies of the material witnesses: (1) Ramirez testified that he and Nunez traveled from Michoacan in a commercial bus, while Nunez stated that it was in a van driven by Rogedo; (2) at the time of his arrest Ramirez stated that he had only a small amount of Mexican pesos, and at trial he stated that he had $1,000 in United States currency; (3) at his deposition Ramirez stated that he had never been in the United States, while he

6

admitted that he had previously entered the United States at trial; (4) Ramirez denied his drug conviction until trial; (5) Nunez' denied having been outside her home town before this incident.

The cited inconsistencies do not negate the substantial evidence of Rogedo's guilt. Each of the cited matters goes to the credibility of the witnesses, and thus is a matter for the jury to determine. Both of the material witnesses were subjected to extended cross-examination on precisely these subjects. The circumstances cited by Rogedo do not "preponderate heavily against the verdict" and the defendant's motion will be denied.

IT IS ACCORDINGLY ORDERED this 16th day of December, 2002, that the motion of the defendant is hereby denied.

J. THOMAS MARTEN, JUDGE

7